UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**TAWNYA SOUTH GOLDMAN**                                             **PLAINTIFF**

**v.**                      **No. 3:17-CV-00013-JTR**

**NANCY A. BERRYHILL,**
**Acting Commissioner,**
**Social Security Administration**                                    **DEFENDANT**

## ORDER REMANDING TO THE COMMISSIONER

Tawnya Goldman ("Goldman") applied for social security disability benefits with an alleged disability onset date of July 31, 2011. (R. at 79). After a hearing, the Administrative Law Judge ("ALJ") denied her application. (R. at 29). The Appeals Council denied Goldman's request for review (R. at 1), thereby making the ALJ's decision the final decision of the Commissioner. Goldman has requested judicial review.[1]

For the reasons stated below, the Court reverses and remands the Commissioner's decision.

**I.**      **The Commissioner's Decision**

The ALJ found that Goldman had the severe impairments of seizures, headaches, degenerative disk disease, diabetes, obesity, anemia, major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder. (R. at 18).

---

[1]The parties have consented in writing to the jurisdiction of the United States Magistrate Judge.

Based on the evidence, the ALJ determined that Goldman's residual functional capacity ("RFC") allowed her to perform sedentary work except that: she could only sit for a total of six hours in an eight-hour day; she was limited to standing and walking for a total of two hours in an eight-hour day; she was limited to occasional stooping, crouching, bending, kneeling, crawling, and balancing; she required seizure precautions, with no work around unprotected heights, unprotected moving machinery, and no use of firearms, ropes, ladders, or scaffolds; she was limited to work that is simple, routine, and repetitive, with supervision that is simple, direct, and concrete; and she could have frequent contact with coworkers and supervisors and occasional contact with the public. (R. at 20).

Because this RFC precluded Goldman from performing any of her past relevant work (R. at 27), the ALJ took testimony from a vocational expert ("VE"). According to the VE, a person with Goldman's RFC could perform other jobs such as assembler and inspector. (R. at 31). Thus, the ALJ held that Goldman was not disabled. (R. at 28).

## II. Discussion

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable

2

mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

Goldman argues that the ALJ: (1) failed to consider her epilepsy and seizures under Listing 11.03 and develop the record regarding that listing; (2) did not fully account for her mental limitations; and (3) failed to fully account for her physical limitations. Because the Court concludes that the ALJ erred in failing to consider and develop the record regarding whether Goldman's seizures met a listing, it is not necessary to reach her other points for reversal.

If the claimant meets the criteria of a listed impairment, no further proof is needed to establish disability. *Johnson v. Astrue*, 628 F.3d 991, 993 (8th Cir. 2011). In his decision, the ALJ stated that he had considered Listings 1.04, 12.04, and 12.06. (R. at 18–19). Although he found that Goldman's seizures were a severe impairment and that she required seizure precautions to work (R. at 18, 20), he did not discuss Goldman's seizures or epilepsy at all when considering the listings.

Listing 11.03 requires a showing of:

3

nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.03.[2]

The Commissioner argues that Goldman's seizures cannot meet Listing 11.03 because, at the December 15, 2015 administrative hearing, she admitted that she had not filled her anti-seizure medication prescription in "months." (R. at 59-60, 69). According to the Commissioner, Goldman's noncompliance meant she had failed to show that her epilepsy had continued "in spite of at least 3 months of prescribed treatment," as required by Listing 11.03. *Doc. 12, at 5-6.*

On July 1, 2014, Goldman's primary care physician, Barry Hendrix, M.D., submitted a seizure report stating that, in the prior three months, Goldman had suffered four to five petit mal seizures a month, characterized by "alteration of awareness." (R. at 719-20). According to the report, her last seizure was "two days

---

[2] In their briefs, the parties refer only to Listing 11.03 for "nonconvulsive epilepsy." *Doc. 11 at 17-19; Doc. 12 at 5-8.* Effective September 29, 2016, the Social Security Administration revised its listing criteria for neurological disorders. All classifications of epilepsy are now analyzed under Listing 11.02, and Listing 11.03 no longer exists. *See* Revised Medical Criteria for Evaluating Neurological Disorders, 81 F.R. 43048-01, 43054, 43056 (July 1, 2016). While the Court has reviewed the ALJ's decision under the listing in effect at the time of his decision (February 9, 2016), the new listing must be applied to any decision made after this Court's remand. *Id.* at 43051 & n.6 ("If a court reverses the Commissioner's final decision and remands a case for further administrative proceedings after the effective date of the final rule, we will apply the final rule to the entire period at issue in the decision we make after the court's remand.").

ago." The report states that Goldman started taking Topamax one week earlier. (R. at 719). Other records confirm that June 25, 2014 was the date she started taking Topamax. (R. at 637).

Eighteen months later, at the December 15, 2015 administrative hearing, Goldman she testified that she: (1) was not taking the medication that was prescribed to help her with her seizures; (2) had not filled the prescription in "months"; and (3) had been unable to get an appointment with the neurologist. (R. at 56-60, 69). The medication list she presented at the hearing, dated December 15, 2015, did not list Topamax or any other anti-seizure medication. (R. at 38, 363-64.)

Thus, although it is clear that Goldman discontinued taking Topamax at some point between June 25, 2014 and December 15, 2015, it is unclear when this happened.

According to records from Dr. Hendrix, Goldman reported to him, on the following dates, that she was "taking .. Topamax 25 mg tablet 1 tab(s) 2 times a day":

> July 1, 2014
> July 17, 2014
> September 26, 2014
> October 7, 2014
> November 7, 2014
> January 19, 2015

5

(R. at 726, 734, 736, 738, 740, 911, 919). However, her pharmacy records from July 2014 through November 30, 2015 do not list Topamax or its generic counterpart, Topiramate. (R. at 355-61).

In a disability questionnaire dated September 25, 2014, Goldman reported that she was currently taking "no" medications. (R. at 317). At a visit to a mental health counselor on November 6, 2014, Goldman did not list Topamax as one of her "current medications" (R. at 1001), but on December 18, 2014, she listed it as part of her "most recent medication regimen" for "seizures and headaches." (R. at 984).

On November 11, 2014, in an ER visit to the hospital for chest and back pain, she *not* list Topamax as a medication she was taking. (R. at 795-96). Nor did she list it at ER visits on January 10, 2015 (for ankle and head injury, with loss of consciousness, after a fall) or January 19, 2015 (for radiating neck pain, and numbness and tingling in her left arm). (R. at 923-24, 935-36, 939-40).

However, in disability paperwork dated January 20, 2015, Goldman listed Topamax as a medication that she was "currently taking." (R. at 326). And at a visit to a mental health counselor on February 9, 2015, Goldman listed Topamax as one of her medications. (R. at 978-79).

Dr. Hendrix's records, dated May 19, 2015 and June 2, 2015, show that Goldman identified Topamax as a prescribed drug she was "*not taking*." (R. at 953, 955).

6

Finally, at an ER visit for jaw pain and headache on August 8, 2015, she listed Topamax/Topiramate as one of her medications. (R. at 1008). She also listed it as one of her medications at an ER visit on January 16, 2016. (R. at 1024).

The medical records are also unclear regarding the extent to which Goldman's seizure activity persisted. At the administrative hearing, Goldman testified that, since she had stopped taking her medication, her seizures had increased "a little bit," but she tried to avoid "triggers," such as strong smells, or focusing on the TV or computer. She also testified that she had "more blackouts" than seizures. (R. at 69). The medical records show some reports of loss of consciousness and "blackouts" between July 2014 and December 2015. (R. at 939-41, 955).

In his decision, the ALJ acknowledged the diagnoses of petit mal seizures, epilepsy, and mesial temporal lobe seizures. (R. at 22-23.) He found that Goldman's seizures were a severe impairment, that her headaches and seizures resulted in "environmental limitations," and that she required seizure precautions to work. (R. at 18, 20, 27). In light of this record, the ALJ erred in failing to consider whether Goldman met the listing criteria and, if necessary, to develop the record on the issue.

The Commissioner argues that the ALJ was not required to consider Listing 11.03 because the record as a whole contains sufficient evidence to show that Goldman did not meet all the listing criteria. The Court disagrees. As discussed, the evidence is unclear, at best, as to whether seizure activity persisted despite three

7

months of proper treatment. In his decision, the ALJ discredited Goldman's allegations of seizure-related disability based on her report of doing laundry once a week, helping to cook dinner, washing dishes, and assisting in the care of her husband's niece during visits. (R. at 25, 304). Goldman testified that her care of her husband's niece consisted of running a bath and putting a towel on her after she finished bathing. (R. at 54). As the Eighth Circuit has observed, "claimants may have a disabling seizure disorder and still be able to perform some daily home activities." *Tate v. Apfel*, 167 F.3d 1191, 1197 (8th Cir. 1999). The disruptions that seizures cause can be more readily adjusted for in the home than in a work environment. *Id.* Therefore, these activities are not sufficient to show that Goldman's seizures are not disabling.

Finally, the Commissioner argues that the ALJ was not required to further develop the record because Goldman failed to seek low cost healthcare options. The question is not whether Goldman properly sought alternative healthcare options—though this may be properly considered in determining credibility—but whether her seizures persisted despite three months of proper treatment.[3] The ALJ has a duty to act neutrally in fully and fairly developing the record, as social security disability

---

[3]Goldman's failure to seek low-cost healthcare also may be relevant under the new listing regarding seizures. In evaluating the frequency of seizures under the new rules, the Commissioner "do[es] not count seizures that occur during a period when you are not adhering to prescribed treatment without good reason." "Good reason" may exist if a claimant is "unable to afford prescribed treatment that [he or she is] willing to accept, but for which no free community resources are available." § 11.00(H)(4)(d).

8

hearings are non-adversarial. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). This duty extends to cases where the claimant is represented by counsel. *Id.* The evidence concerning Goldman's seizures raises important questions, and the ALJ must seek answers to those questions.

## III. Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole does not contain ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ's decision is therefore REVERSED and REMANDED, with instructions to further develop the record as necessary and to consider Goldman's seizures under any and all applicable listings.

It is so ordered this 5th day of January, 2018.

_____
UNITED STATES MAGISTRATE JUDGE